## UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## SAN ANTONIO DIVISION

| | |
|---|---|
| ELISA GARZA, ROWLAND ESTRADA, STANLY ISAQ, FELICIA WOODS, BARRY TAYLOR, FOMOSHA TAYLOR, NGHI VO, DIANA MARTINEZ, JAMES BOHLIN, GREGZELL BROWN, TIFFANY HENRY, HEATHER ADAMS, DESMOND SMITH, AMANDA CAPPS, HALEY MASTERS, AMELIA GONZALEZ, JOE GONZALEZ, DANIKA YOUNG, ANDRIA GUERRA, LATONYA SMITH, ANTHONY RANDLE, BERNICE THOMAS ESAW, TAMICA THOMAS, AND EMMANUEL EMMANUEL, | CIVIL ACTION NO.  5:21-cv-1221 |

Plaintiffs,

VS.

THE UNIVERSITY OF PHOENIX, INC. AND APOLLO EDUCATION GROUP, INC.

Defendants.

COMPLAINT FOR DAMAGES

1. VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (Tex. Bus. & Com. Code §§ 17.41 *et seq.*)

2. FRAUD

3. NEGLIGENT MISREPRESENTATION

4. RESTITUTION FOR UNJUST ENRICHMENT

DEMAND FOR JURY TRIAL

Plaintiffs complain and allege as follows:

## INTRODUCTION

1.      This lawsuit seeks recovery for violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), fraud, negligent misrepresentations, and restitution for unjust enrichment against THE UNIVERISITY OF PHOENIX, INC. and APOLLO EDUCATION GROUP, INC. Since at least 2012, Defendants misrepresented the benefits of graduating from University of Phoenix. Defendants falsely and misleadingly advertised working with certain prominent companies to develop curriculum and relationships with such companies created career or employment opportunities specifically for University of Phoenix graduates, to induce potential

1

students to purchase educational products and services, and to remain students through graduation. These misrepresentations will be referred to hereinafter as the Corporate Relationships Representations. Plaintiffs relied on the Corporate Relationships Representations in choosing to purchase educational products and services from University of Phoenix.

2.      Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge. The basis for allegations made on information and belief includes the Civil Investigation Demand issued by the Federal Trade Commission (FTC) on September 8, 2015, the complaint filed by the FTC against Defendants in the Northern District of Arizona, and the subsequent settlement of that case.

## PARTIES

3.      Plaintiff Elisa Garza was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Master's of Science in Criminal Justice in Security Administration degree. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately in 2013-2014, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix counselor. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically

to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

4.      Plaintiff Rowland Estrada was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 and 2020 with a Bachelor of Science degree and Master's degree in Business and Business Administration. Plaintiff attended classes at the University of Phoenix online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately in 2012-2013, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter, enrollment advisor, and counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

5.      Plaintiff Stanly Isaq was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2014 with a Bachelor of Science degree and Master's degree in Science in Criminal Justice Administration and Administration of Justice and Security. Plaintiff attended classes at The University of Phoenix online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job

or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately in 2012, such as on TV, radio, and flyers, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix counselor and enrollment advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

6.     Plaintiff Felicia Woods was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with a Bachelor of Science degree in Human Services. Plaintiff attended classes at the Wind Crest, San Antonio campus and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2012, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix counselor and enrollment advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with

4

any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

7.     Plaintiff Barry Taylor was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with a Bachelor of Science degree in Business. Plaintiff attended classes at The University of Phoenix Houston, Texas located campus on the Katy Freeway and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately in 2013, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix counselor, enrollment advisor, financial advisor, and student advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

8.     Plaintiff Fomosha Taylor was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Medical Records Undergraduate Degree. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the

Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately in 2013, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix counselor, recruiter, enrollment advisor, and financial advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

9.      Plaintiff Nghi Vo was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with an Associate of Arts degree concentrating in Accounting Fundamentals. Plaintiff attended classes at the University of Phoenix online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2014-2015, such as Facebook, YouTube, the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment specialist. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representation, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at

University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

10.     Plaintiff Diana Martinez was at all relevant times a resident of Dallas, Texas. Plaintiff enrolled in University of Phoenix in 2016, paid tuition and associated costs of attending University of Phoenix, and graduated in 2018 with a Bachelor of Science degree in Business. Plaintiff attended classes at the University of Phoenix campus on Coit Road in Dallas, Texas. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately in 2015, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix career advisor, counselor, and enrollment advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

11.     Plaintiff James Bohlin was at all relevant times a resident of Dallas, Texas. Plaintiff enrolled in University of Phoenix in 2016, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with a Bachelor of Science degree in Management. Plaintiff attended classes at the University of Phoenix Churchill Tower campus in Dallas, Texas. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting

relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2015-2016, such as on TV, radio, billboards, and pamphlets, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter, enrollment advisor, and the University of Phoenix website. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

12.     Plaintiff Gregzell Brown was at all relevant times a resident of Dallas, Texas. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with an Associate of Arts degree. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2013-2014, such as TV commercials, radio, online Facebook ads and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor, recruiter, and counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies

that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

13.     Plaintiff Tiffany Henry was at all relevant times a resident of Dallas, Texas. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with a Bachelor of Science in Accounting degree. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2014, such as on TV commercials, Facebook ads, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter and academic advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

14.     Plaintiff Heather Adams was at all relevant times a resident of Denton, Texas. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with a Bachelor of Science in Business degree. Plaintiff attended classes at the University of Phoenix online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately in 2013-2014, such as on TV

9

commercials, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by University of Phoenix counselors and the enrollment advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

15.    Plaintiff Desmond Smith was at all relevant times a resident of Allen, Texas. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Bachelor of Science in Management degree. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2012, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix counselor, enrollment advisor, and financial advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically

to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

16.     Plaintiff Amanda Capps was at all relevant times a resident of Austin, Texas. Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of attending University of Phoenix, and graduated in 2015 with an Associate of Art degree. Plaintiff attended classes at the University of Phoenix online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements, and the Corporate Relationships Representations were reiterated by a University of Phoenix representative. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

17.     Plaintiff Haley Masters was at all relevant times a resident of Austin, Texas. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with an Associate of Arts Concentration in Psychology degree. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2013-2014, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor,

admissions representative, and counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

18.    Plaintiff Amelia Gonzales was at all relevant times a resident of Weslaco, Texas. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2016 with a Bachelor of Science degree in Criminal Justice Administration. Plaintiff attended classes on campus and online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2012, such as on TV, radio, Facebook, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix Senior Finance Advisor, academic counselor, and financial aid advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

19.     Plaintiff Joe Gonzales was at all relevant times a resident of Laredo, Texas. Plaintiff enrolled in University of Phoenix in 2015, paid tuition and associated costs of attending University of Phoenix, and graduated 2016 with an Associate of Arts Professional Focus and Bachelor of Science in Criminal Justice and Management. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2012-2013, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter, academic advisor, enrollment advisor, and counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

20.     Plaintiff Danika Young was at all relevant times a resident of Roanoke, Texas. Plaintiff enrolled in University of Phoenix in 2016, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with a Bachelor of Science degree in Business. Plaintiff attended classes at online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2014-2015, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix counselor and enrollment advisor.

13

Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

21.    Plaintiff Andria Guerra was at all relevant times a resident of Killeen, Texas. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2014 with an Associate of Arts degree and 2017 with a Bachelor of Science degree in Communication. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2012, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix recruiter, and academic advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

22.     Plaintiff LaTonya Smith was at all relevant times a resident of Killeen, Texas. Plaintiff enrolled in University of Phoenix in 2013, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with an Associate of Arts Concentration in Psychology degree. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2013, such as on TV, radio, online such as Facebook, YouTube, and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix academic advisor, financial advisor, counselor, and enrollment advisor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

23.     Plaintiff Anthony Randle was at all relevant times a resident of Lubbock, Texas. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2013 with a Master's of Business Administration degree. Plaintiff attended classes online. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2012, such as on TV Commercials, and on the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor and financial advisor. Based on confirmation by the

University of Phoenix representatives of the Corporate Relationships Representation, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

24.    Plaintiff Bernice Thomas Esaw was at all relevant times a resident of Katy, Texas. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2019 with a Bachelor's of Science degree in Psychology. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff saw Defendants' advertisements, and the Corporate Relationships Representations were reiterated by a University of Phoenix representative. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

25.    Plaintiff Tamica Thomas was at all relevant times a resident of Humble, Texas. Plaintiff enrolled in University of Phoenix in 2014, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with a Bachelor of Science degree and 2019 with a

Master's in Business Administration and Health Administration degree. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff initially saw Defendants' advertisements in approximately 2014, such as online such as Facebook and the University of Phoenix website. The Corporate Relationships Representations were reiterated by a University of Phoenix enrollment advisor and counselor. Based on confirmation by the University of Phoenix representatives of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

26.     Plaintiff Emmanuel Emmanuel was at all relevant times a resident of Richmond, Texas. Plaintiff enrolled in University of Phoenix in 2012, paid tuition and associated costs of attending University of Phoenix, and graduated in 2017 with a Bachelor's of Science Degree in Information Technology. Plaintiff relied on Defendants' advertisements making the Corporate Relationships Representations, touting relationships and job or career opportunities with certain companies, when choosing to enroll in University of Phoenix. Plaintiff saw Defendants' advertisements, and the Corporate Relationships Representations were reiterated by a University of Phoenix representative. Based on confirmation by the University of Phoenix representative of the Corporate Relationships Representations, Plaintiff chose to enroll at University of Phoenix. Plaintiff continued to see advertisements making the Corporate Relationships Representations while a student at University of Phoenix. Plaintiff also relied on these advertisements in choosing to remain a student at University of Phoenix. Plaintiff sought and did not find employment with

any of the companies that Defendants purported to have relationships providing job or career opportunities specifically to University of Phoenix graduates. Plaintiff would not have enrolled in University of Phoenix if Plaintiff had known that the Corporate Relationships Representations were false and misleading.

## DEFENDANTS

27.     The University of Phoenix, Inc. is an Arizona corporation, with its principal place of business at 4025 S. Riverpoint Parkway, Phoenix AZ, 85040. University of Phoenix transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, University of Phoenix has advertised, marketed, distributed, or sold educational products and services to consumers throughout the United States, Texas, and in this district. Defendant University of Phoenix may be served with process through its registered agent Corporation Service Company D/B/A CSC Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, TX 78701.

28.     Apollo Education Group, Inc., formerly known as Apollo Group, Inc., transacts or has transacted business in this district and throughout the United States. Apollo Education Group parent company of The University of Phoenix, Inc. At all times material to this Complaint, with respect to the acts and practices of The University of Phoenix, Inc. that are described below, Apollo Education Group, Inc. dominated or controlled those acts or practices, knew of or approved those acts and practices, or benefited from those acts and practices. Defendant Apollo Education Group, Inc. does not currently maintain and agent for service of process in the State of Texas and, therefore, may be served through the Texas Secretary of State at Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

## Overview of Defendants' Business and Advertising

29.     Apollo Education Group, Inc. operated University of Phoenix, a private, for-profit post-secondary educational institution, with approximately 55 campuses throughout the United States. Though University of Phoenix offers both in-person and online classes, most University of

Phoenix students attend class exclusively online. University of Phoenix offers certificate courses and associate, bachelor's, master's, and doctoral degree programs.

      **30.**    University of Phoenix has charged consumers tuition ranging from about $7,400 to $19,400 per year, depending on the program.

      **31.**    Since 2012, University of Phoenix**'s** net revenue has exceeded $13.5 billion. Apollo Education Group, Inc., during the same time, derived between 78% to 91% of its annual net revenue from University of Phoenix.

      **32.**    Apollo Education Group, Inc. and University of Phoenix have relied heavily on advertising to attract students to University of Phoenix, including specific advertisements targeting military and Hispanic consumers. Apollo Educations Group, Inc. and University of Phoenix spent over $1.7 billion on advertising and marketing between fiscal years 2013 and 2015 alone.

      **33.**    Prior to 2012, Defendants' advertising campaigns for University of Phoenix primarily emphasized factors such as flexibility, convenience, online coursework, and accreditation. By early 2012, however, Defendants' market research indicated that this advertising no longer differentiated University of Phoenix from its competitors, which were touting similar benefits.

      **34.**    Additionally, according to SEC filings and internal documents, University of Phoenix's enrollment numbers were declining due to increased competition for students. The average enrollment in degree programs at University of Phoenix between 2010 and 2012 dropped from approximately 460,900 to 356,900 students.

**Defendants' "Let's Get To Work" Advertising Campaign**

      **35.**    In 2012, based on market research, Defendants adopted an advertising strategy focused on claims connecting a University of Phoenix education with successful career or employment outcomes. Defendants' research showed that many students decided to enroll in post-secondary programs because of the potential for career success, including the belief that an education will get them a job or a better salary. But Defendants' research also showed that "consumers currently do not consider University of Phoenix to be their top choice… because they

19

do not believe University of Phoenix education will provide them the career outcome advancements they desire."

36.     Defendants released a new advertising campaign in late summer 2012 to change this perception. Titled "Let's Get to Work," the campaign featured numerous high-profile corporate employers, such as Microsoft, Twitter, Adobe, and Yahoo!. The overarching goal of the campaign was to convince consumers that University of Phoenix students experience career success because of University of Phoenix. Specifically, Defendants represented that University of Phoenix has worked with companies to create career or employment opportunities for University of Phoenix students and that University of Phoenix has worked with companies, such as Adobe, Microsoft, and Twitter, to develop curriculum oriented to the companies' job needs.

37.     In reality, these companies were not working with University of Phoenix or Apollo Education Group, Inc. to create job opportunities for University of Phoenix students or to develop curriculum.

38.     Instead, Defendants selected companies to feature in their advertisements based on desired brand association. The strategy was to focus on "large, stable technology-based, forward-focused companies with great reputations" because these companies drove the highest level of prospective student interest.

### **"Parking Lot" Television Ad**

39.     Defendants have widely disseminated or caused to be disseminated, an advertisement, known as "Parking Lot," on numerous television stations, commencing around October 15, 2012.

40.     Narrated by Phylicia Rashad, known for her television role as Clair Huxtable, a successful attorney who balances work with family on *The Cosby Show*, Ms. Rashad's voice can be heard saying as the ad begins: "Like a lot of things, trying to find a better job can be frustrating, so at University of Phoenix we're working with a growing list of almost 2,000 corporate partners, companies like Microsoft, American Red Cross, and Adobe, to create options for you."

41.     Ms. Rashad concludes the commercial by stating: "Not only that, we're using what we learn from these partners to shape our curriculum so that when you find a job you want, you'll be a perfect fit. Let's Get to Work."

42.     In reality, the companies referenced in the "Parking Lot" advertisement did not have relationships with University of Phoenix or Apollo Education Group, Inc. to create job options for University of Phoenix students or to develop curriculum. Many of the "2,000 corporate partners," including the specific companies referenced in the "Parking Lot" advertisement, were what Defendants referred to as "Workforce Solutions" (WFS) partners - companies whose own employees received a tuition reduction benefit from University of Phoenix in exchange for the companies promoting Defendants' academic programs.

43.     Notwithstanding the misleading nature of the ads, University of Phoenix's Chief Business Operating Officer reported to the marketing team that he had presented the ad campaign to the Apollo Education Group, Inc. Board for its review and that the Board was "completely supportive of our strategies to differentiate UOPX." He further "assure[d]" the team that the "Let's Get to Work" campaign had the "total support" of Defendants' founder, who also was the Apollo Education Group, Inc. Board Chairman at the time, as well as his son, who subsequently took over as Chairman in December 2012.

### "Train Stops" Television Ad

44.     Another example of an advertisement disseminated on numerous television station as part of Defendants' "Let's Get to Work" campaign's is titled "Train Stops." The purpose of the "Train Stops" advertisement was to highlight that University of Phoenix's corporate partners connect University of Phoenix students with meaningful employment opportunities.

45.     As the scene open inside a subway train, Ms. Rashad states: "At University of Phoenix, we know the value of your education is where it can take you." The camera focuses on a female passenger looking up at a station map depicting logos of top companies, including Waste Management, the American Red Cross, Methodist Hospital System, and Adobe.

46.     A blue billboard in the right corner states, "Get your foot in a few thousand doors."

47.     The advertisement next shows additional company logos, including AT&T, and turns to show the female passenger disembarking at her destination. As she does so, the voiceover concludes: "which is why we are proud to help connect our students with leading employers across the nation. Let's get to work."

48.     A University of Phoenix survey designed to gauge how well the ads delivered the intended message validated that the advertisement "conveys a compelling message that suggests that an education with UOPX opens doors and that UOPX can help them find jobs with specific corporate partners."

49.     In reality, Apollo Education Group, Inc. and University of Phoenix's relationships with "leading" employers or companies, including the corporate partners referenced in the "Train Stops" ad, did not create job opportunities for University of Phoenix students. University of Phoenix merely engaged a third-party provider to host an online portal that included job listings from some of these companies. Most, if not all, of the job listings were in fact widely available to non- University of Phoenix students.

### *"Hall of Success"* Television Ad

50.      Defendants also widely disseminated, or caused to be disseminated, on numerous television stations an advertisement known as "Hall of Success."

51.     In the opening scene of this advertisement, the camera zooms in on two heavy oak doors that open to reveal a wall covered in gilded frames. Ms. Rashad states: "The Hall of Success. Here we honor the proud accomplishments of our students and alums." In each frame is a person and a company logo, representing University of Phoenix alumni at various top employers such as the American Red Cross, CBS Radio, Microsoft, and Yahoo!.

52.     After identifying "Maria Salazar" at the American Red Cross and "Garlin Smith" at Yahoo!, Ms. Rashad states: "And for every Garlin, thousands more are hired by hundreds of top companies." As she makes this statement, the camera pans to show a vast hall with hundreds of additional gilded portraits.

Ms. Rashad concludes: "That's right. University of Phoenix. Enroll now. We have a frame waiting for you."

53.      University of Phoenix's Chief Marketing Officer described the "Hall of Success" ad as a natural follow up to "Parking Lot" and "Train Stops" and their corporate partner messaging by associating names and faces with these well-known companies.

54.      In reality, hundreds of top companies did not regularly hire thousands of University of Phoenix students because of University of Phoenix's relationships. In fact, many University of Phoenix students were employed by those companies *prior to or at the time* they attended University of Phoenix, or were hired regardless of their graduation from University of Phoenix.

55.      For example, an alumnus depicted in the ad as employed at the American Red Cross joined the organization in 1997 and obtained a Master's degree from University of Phoenix in 2005 while already working at the American Red Cross for nearly eight years.

56.      Indeed, Defendants knew that many University of Phoenix students or graduates were already working at their respective companies before enrolling in University of Phoenix, and that University of Phoenix's relationship was not the reason for their employment at the company.

**Curriculum Radio Ad**

57.      In a radio advertisement, Defendants touted University of Phoenix's relationships with particular companies, representing that these companies worked with University of Phoenix to design curriculum. The advertisement prominently claimed:

> If you want to know how to get hired, it pays to go right to the source. At University of Phoenix we're talking to companies like AT&T, Sodexo, and Adobe about what they're looking for in future employees. They're helping us shape our curriculum to make sure today's classes help prepare you to pursue tomorrow's jobs.

58.      In reality, AT&T, Sodexo, and Adobe did not work with University of Phoenix to develop curriculum that would prepare students for jobs at those companies.

**Internet Ads & Claims**

59.     Defendants also have made the deceptive claims about employment opportunities and curriculum via digital ads, social media posts, and representations on their websites. Defendants disseminated and advertised the "Let's Get to Work" campaign, including the advertisement described above, on internet sites such as Facebook, Twitter, and YouTube. As a result of these efforts, the advertisements have garnered more than a billion impressions on social media channels such as Facebook, Twitter, and YouTube.

60.     For example, on or around October 16, 2012, University of Phoenix claimed in a Facebook post that University of Phoenix is working with almost 2,000 corporate partners to provide job opportunities to University of Phoenix students and touted "Corporate Partnerships Shaping Curriculum."

61.     Similarly, Defendants have featured digital ads and banners on the internet representing that their relationships with companies provided students with job opportunities, using the hook: "Get your foot in a few thousand doors."

62.     Calling certain companies "Employer Partners," University of Phoenix's website has represented that University of Phoenix's relationships with these companies create employment opportunities for students. Defendants also have represented on their website that University of Phoenix's curricula was "developed in collaboration with industry leaders to help cultivate skills valued by employers." These claims have been made in proximity to logos of recognizable companies, including Fortune 500 companies.

**Ads Targeting Current and Former Military Members**

63.     Defendants also have made deceptive claims about employment opportunities in ads to current and former military members. University of Phoenix has been the largest recipient of Post-9/11 GI bill benefits since the program's inception. For example, University of Phoenix received over $271 million in 2012-2013 alone.

64.     University of Phoenix created and disseminated an advertisement that claimed University of Phoenix's corporate partnerships with companies like AT&T and Allied Barton offered hiring programs from University of Phoenix students who were veterans.

65.     In reality, Defendants' relationships with these companies did not create employment opportunities for University of Phoenix students who were current or former military members. The companies' hiring programs were open to all veterans and were not a result of their status as University of Phoenix "Corporate Partners."

### Enrollment Representative Claims

66.     Beginning in or around September 2012, in conjunction with its "Let's Get to Work" campaign, Defendants rolled out talking points and encouraged employees, including "enrollment advisors," to communicate these false or misleading messages to students and prospective students.

67.     Defendants routinely sent links to the advertisements along with a campaign overview to employees. A one-sheet summary of the campaign talking points for *Hall of Success* included the claims that "Corporate Partnerships" are "Providing job opportunities and helping shape our curriculum." Defendants also tasked employees, some dubbed "Phoenix Champions," with messaging the campaign and provided talking points to various University of Phoenix teams, including enrollment advisors, academic counselors, finance advisors, call center employees, and other student or prospective student facing employees. The talking points claimed that University of Phoenix's relationships with corporate partners, including many Fortune 500 companies, provided an "inside track" and a "competitive advantage to our students." As proof that these relationships were working, Defendants directed employees to claims that alumni were being hired by "hundreds of top companies like Microsoft, Yahoo!, American Red Cross and CBS," Additional talking points described the online jobs portal as providing "[a]ccess to unique job opportunities and connections exclusive to University of Phoenix Students." In fact, University of Phoenix portal listings were not unique or specifically for University of Phoenix students, but were widely available to non- University of Phoenix students.

68.     At Defendants' behest, University of Phoenix enrollment advisors began telling prospective students that companies, including Fortune 500 companies, hired University of Phoenix students because of the school's corporate partnerships. For example, enrollment advisors represented to callers inquiring about University of Phoenix that the school has "over 2,000 partners in the local area… they hire our students first and from there they go on," and that University of Phoenix has "over 2,000 corporate partners and national industry partners that are looking specifically at University of Phoenix students to hire instead of any other schools."

69.     In reality, the companies were not specifically hiring University of Phoenix students over other candidates, and were not working with University of Phoenix to develop tailored curricula. The "partnerships" were primarily marketing relationships that did not create jobs or curricula for University of Phoenix students.

### Claims Regarding Relationships with Corporate Partners

70.     The "Let's Get to Work" campaign prominently touted that University of Phoenix's relationships with companies, such as Adobe, the American Red Cross, Avis, AT&T, Hitachi, MGM, Microsoft, Newell Rubbermaid, Sodexo, Twitter, and Waste Management, create job opportunities specifically for University of Phoenix students.

71.     Defendants' relationships with these companies did not create or provide job opportunities for University of Phoenix students. Any benefits from the relationships applied to current employees of the companies who would be able to attend University of Phoenix at a reduced cost.

72.     Moreover, any job opportunities with these companies were not unique to University of Phoenix students, and in fact, were widely available on other websites or were simply copied by University of Phoenix employees into the University of Phoenix career portal.

73.     Defendants knew that representations about job or career opportunities were false or misleading because they conducted annual alumni surveys that asked about employment outcomes. The 2013 alumni survey showed that approximately 60% of University of Phoenix students stayed with their same employer after graduation. In fact, the survey found "a significant

disparity" between alumni expectations for obtaining a new job and the reality of obtaining a new job *with any company* base on a University of Phoenix degree.

### Claims Regarding Curriculum Development

74.     Defendants also have represented that University of Phoenix has worked with companies, such as Adobe, the American Red Cross, Avis, AT&T, MGM, Microsoft, Newell, Rubbermaid, Sodexo, and Twitter, to develop curriculum.

75.     In reality, these companies did not work with Defendants to develop curriculum.

76.     In fact, Defendants were aware that the claim was baseless. In November 2012, a University of Phoenix a Senior Vice President alerted numerous employees, including University of Phoenix and Apollo Education Group, Inc. executives, that the "Let's Get to Work" campaign was creating "misconceptions," including that companies were working with University of Phoenix to develop its curriculum. The Senior VP explained that University of Phoenix is not "working directly with companies one at a time and/or creating custom curriculum based upon their needs."

77.     Similarly, in an October 24, 2012 email chain, Apollo Education Group, Inc. and University of Phoenix employees discussed how Defendants "have not worked with Microsoft yet," even though Defendants already had begun broadcasting ads, including "Parking Lot," that claimed the company was working with University of Phoenix to develop curriculum.

78.     Rather than working with the companies touted in its advertisements, Defendants have relied on a list of standard job competencies generated by a third-party human resources company. This third-party framework identifies general skills and traits (such as "leading and deciding," "adapting and coping," and "organizing and executing") associated with particular jobs and industries. Contrary to what Defendants promised, this third-party framework does not reflect input from companies, such as Adobe, Microsoft, or Twitter, about their specific needs.

79.     Defendants' research showed that employment prospects associated with post-secondary education were important factor for many consumers deciding whether to enroll at University of Phoenix.

80.     While developing the "Let's Get to Work" campaign, University of Phoenix surveyed the influence of its advertisements on consumers. According to one survey, "[t]he key compelling aspect of th[e] ["Parking Lot"] spot was the communication of University of Phoenix's partnership with 1,200 large corporations. These partnerships serve to inspire consumers to consider University of Phoenix and also served to validate/legitimize University of Phoenix as a brand."

81.     By January 22, 2013, as University of Phoenix continued to roll out its "Let's Get to Work" campaign, the University of Phoenix Senior Vice President for University Strategy reported to the President's Cabinet (a group of University of Phoenix executives advising University of Phoenix's President) that the "repositioning of UOPX as connecting education to careers (E2C) appears to be paying off. Early results indicate significantly improved conversion rates…"

82.     Another study conducted around May 24, 2013 reported that the "Let's Get to Work" advertising campaign, including claims about "[r]elationships with leading employers and a dynamic curriculum designed with their input," increased the percentage of consumers who would consider attending University of Phoenix from 12% to 29%.

83.     The Boards and executives of University of Phoenix and Apollo Education Group, Inc. continued tracking the campaign's effectiveness in increasing "consumer consideration" of University of Phoenix.

## **FIRST CAUSE OF ACTION**

### DECEPTIVE TRADE PRACTICES ACT

84.     Plaintiffs incorporate paragraphs 1 through 83 of this Complaint as though fully alleged herein.

85.     Defendants misrepresented the benefits of obtaining a degree from University of Phoenix in advertising marketing, or other promotion of its educational products and services. The Corporate Partnerships Representations were made through various means such as television, internet, webpages, Facebook and in person by Defendants' representatives. The Corporate

Partnerships Representations were false, misleading, and deceptive. Plaintiffs reasonably relied on Defendants' representations in deciding to enroll in and/or to continue their studies at University of Phoenix through graduation. Plaintiffs did not obtain employment or a career with any of Defendants' so-called Corporate Partners, despite diligent efforts to secure employment.

86.     Plaintiffs are consumers as defined in the DTPA in that Plaintiffs sought or acquired educational products and services by purchase from University of Phoenix and the purchase of these educational products and services are the basis of Plaintiffs' claims.

87.     Plaintiffs each delivered to Defendants a demand letter detailing their claims, including the amount of the claim, together with a demand for reasonable attorney's fees and expenses to the date of the letter. Therefore, all conditions precedent to Plaintiffs' recovery in this action have been performed or have occurred.

88.     Defendants have not tendered payment or presented an adequate offer of settlement in writing in response to Plaintiffs' demand letters.

89.     Defendants knowingly or intentionally engaged in false, misleading, or deceptive practices in the transactions described above, which were a producing cause of damages to Plaintiffs. Defendants' conduct took advantage of Plaintiffs' lack of knowledge, ability experience, or capacity to a grossly unfair degree so as to be a producing cause of damages to Plaintiffs.

90.     As a result of Defendants' conduct, Plaintiffs have been injured in that they paid tuition, purchased books and supplies, incurred debt, and attended classes in reliance on Defendants' representations. Plaintiffs have also suffered mental anguish as a result of Defendants' conduct.

91.     Defendants are required to restore Plaintiffs any money or property that was illegally acquired in violation of the Texas Deceptive Trade Practice Act.

92.     To pursue this claim against Defendants, Plaintiffs had to retain The Carlson Law Firm, PC as attorneys and agreed to pay that law firm reasonable fees for their services in maintaining Plaintiffs' claims. Plaintiffs are entitled to recover those fees from Defendants under Section 17.50(d) of the Texas Business and Commerce Code.

## SECOND CAUSE OF ACTION

### FRAUD

93.    Plaintiffs incorporate paragraph 1 through 92 of this Complaint as though fully alleged herein.

94.    Defendants made material representations to Plaintiffs about the employment opportunities for University of Phoenix graduates. The Corporate Partnerships Representations were made through various means such as television, internet webpages, radio, YouTube, Facebook, and in person by Defendants' representatives.

95.    Defendants' representations about the employment or career opportunities for University of Phoenix graduates were false.

96.    When the Corporate Partnerships Representations were made, Defendants either knew that they were false or made the representations recklessly without knowledge of the truth and as a positive assertion.

97.    Defendants made the Corporate Partnerships Representations with the intent that Plaintiffs should act on them by enrolling in University of Phoenix and/or continuing their studies with University of Phoenix.

98.    Plaintiffs acted in reliance on Defendants' representations in making their decision to enroll and/or continue their studies with Defendants through graduation.

99.    Plaintiffs did no obtain employment of a career with any of Defendant's so-called Corporate Partnerships.

100.    Plaintiffs thereby suffered damages.

101.    Plaintiffs are therefore entitled to restitution of the monetary benefits conferred unto Defendants, where under Texas law, one who is induced by fraud to enter into a contract may be entitled to an equitable remedy of restitution that would restore him or her to the position they would have been in had they not been the victim of fraud.

### THIRD CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

**102.** Plaintiffs incorporate paragraphs 1 through 101 of this Complaint as though fully alleged herein.

**103.** In the course of their business, Defendants' supplied false information about the benefits of obtaining a degree from University of Phoenix in advertising, marketing, or other promotion of educational products and services. Defendants supplied false information about the employment or career opportunities of University of Phoenix graduates, the Corporate Partnerships Representations, for the guidance of others, including Plaintiffs herein.

**104.** Although Defendants may claim to have believed that the Corporate Partnerships Representations were true, Defendants did not exercise reasonable care or competence in obtaining or communicating the information.

**105.** Plaintiffs justifiably relied on Defendants' Corporate Partnerships Representations in deciding to purchase educational products and services from University of Phoenix, and/or continue their studies with University of Phoenix through graduation.

**106.** Plaintiffs did not obtain employment or a career with any of Defendants' so-called "Corporate Partners," and Defendants' negligent misrepresentations proximately caused Plaintiffs' injuries and damages.

**107.** Plaintiffs are entitled to a restoration of the monetary benefits conferred unto Defendants, where these monetary benefits were wrongfully secured by Defendants and it would be unconscionable for Defendants to retain them.

### FOURTH CAUSE OF ACTION

### RESTITUTION FOR UNJUST ENRICHMENT

**108.** Plaintiffs incorporate paragraphs 1 through 107 of this Complaint as though fully alleged herein.

109.    Defendants obtained benefits from Plaintiffs in the form of monies paid for tuition, fees, and other costs associated with enrolling in and continuing to pursue studies at University of Phoenix through graduation

110.    Defendants misrepresented the benefits of obtaining a degree from University of Phoenix. Defendants represented that working with certain companies to develop curriculum and relationships with such companies created career or employment opportunities specifically for University of Phoenix graduates.

111.    As such, Defendants have been unjustly enriched through wrongfully obtaining benefits from Plaintiffs by fraud and/or the taking of undue advantage of Plaintiffs.

112.    Plaintiffs are therefore entitled to restitution and/or restoration for unjust enrichment and/or money had and received.

## DEMAND FOR JURY TRIAL

113.  In accordance with Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

Therefore, Plaintiffs respectfully request that Defendants be cited to appear and answer, and that on final hearing, Plaintiffs have:

        a. Restitution;

        b. Economic damages;

        c. Mental anguish damages;

        d. Additional DTPA damages of three times each plaintiff's economic and mental anguish damages;

        e. Attorney's fees through entry of final judgment in this action;

        f. Prejudgment and post-judgment interest;

        g. Costs of this suit; and

        h. Any other relief that the Court finds proper.

Respectfully submitted,

**THE CARLSON LAW FIRM, P.C.**
1717 N. Interstate Highway 35, Suite 305
Round Rock, Texas 78664
Phone: (512) 671-7277
Fax:    (512) 238-0275

By:    /s/ John R. Fabry
       **JOHN R. FABRY**
       Texas Bar No. 06768480
       JFabry@carlsonattorneys.com